II. THE TRIAL JUSTICE ERRED IN HIS REFUSAL TO ALLOW MR. TAYLOR HIS CONSTITUTIONAL RIGHT TO REPRESENT HIMSELF.

One week before jury impanelling, and after the court ruled that Melissa Bentil's testimony may be taken by videotape, Mr. Taylor moved to represent himself since he felt "that he is intelligent enough, capable enough" to do so. His court-appointed attorney likewise moved to withdraw from the case. TR II, 34-35. Mr. Taylor did not request a continuance or the appointment of stand-by counsel. Id. Mr. Taylor had, both before and after appointment of his counsel on April 14, 1986, filed one letter and three motions by himself, requesting that a habeas issue for his appearance each time: a motion to reduce bail (December 27, 1985), a speedy trial motion (February 17, 1986), and a motion for bail reduction and review (October 9, 1986). These documents, all of which are contained in the lower court file and are a part of this record, are written intelligently and legibly in Mr. Taylor's own hand, with a proper certification on each to the Attorney General's Department.

Although the trial justice recognized that Mr. Taylor was attempting to exercise his constitutional "right to represent himself in this trial and conduct his defense in the manner in which he sees fit," TR II, 36, he nonetheless denied the motion for two reasons. First, the trial justice felt that Mr. Taylor was trying to impermissibly achieve a face-to-face confrontation of Melissa Bentil:

> [T]his late motion to withdraw, which is within the discretion of the trial justice, is a tactical and technical attempt on the part of the defense to somehow forge a confrontation between the defendant and the alleged victim, and the Court is not going to allow or entertain that to happen because the statute, 11-37-13.1, clearly indicates that even if the defendant were to represent himself, that other means that are reasonable, logical and adequate under the

> circumstances would be put in place to allow someone other than the defendant to have first-party contact with the witness. So for the fairly apparent purpose for which this motion is being proffered, the Court is going to deny the motion.

TR II, 36-37.

Second, the court held that it was too late for the defendant to attempt to represent himself, as there "has been no indication that defendant is in any way prepared to undertake this defense." TR II, 37. The judge said he was not sure if the motions in the case thus far had been developed by the defendant, "and it would be a gross injustice to this defendant to allow him to proceed pro se in a capital case of this nature at this late stage of the proceedings." Id. The trial justice made no inquiry of the defendant.

In Faretta v. California, 422 U.S. 806 (1975), the United States Supreme Court held that the refusal of the trial court to permit a defendant in a state criminal proceeding to represent him/herself without the assistance of counsel constituted a denial of an accused's independent right of self-representation, which is implied in the structure of the Sixth Amendment and is applicable to criminal defendants in the state courts through the Fourteenth Amendment. See also R.I. CONST. art. I, §10 (accused persons "shall be at liberty to speak for themselves.") Even though the defendant may act unwisely, the High Court held that his/her choice "must be honored out of a respect for the individual which is the life blood of the law." Id. at 819. The right is not only accorded to those who have a technical knowledge of the law, so long as the defendant is aware of the dangers and generally knows what she is doing.

The Faretta decision implicity recognized that the right of an

accused to represent him/herself without the assistance of counsel is not an absolute right. Rather, the right of self-representation is a qualified right and its exercise is subject to reasonable restrictions designed to further two important considerations: protection of other fundamental rights guaranteed the accused by the Constitution, and protection of the orderly administration of the judicial process. See Faretta v. California, supra, at 835; United States v. Coupez, 603 F.2d 1347 (9th Cir. 1979); People v. Anderson, 247 N.W.2d 857 (Mich. 1976).

To be entitled, as a matter of right, to represent him/herself without the assistance of counsel, the defendant must make a timely and unequivocal assertion of the right. The failure to make a timely and unequivocal demand places the decision within the discretion of the trial court. Barnes v. State, 528 S.W.2d 370 (Ark. 1975). A request is "timely" if made prior to commencement of trial. Chapman v. United States, 553 F.2d 886 (5th Cir. 1977)(permitting request until jury impanelling); United States v. Price, 474 F.2d 1223 (9th Cir. 1973)(motion not untimely as matter of law if made before jury was sworn); People v. Hernandez, 209 Cal. Rptr. 809 (Cal.App. 1985)(motion immediately preceding trial not unequivocably untimely); Baker v. State, 637 P.2d 1217 (Nev. 1981)(anytime before jury impanellment is timely); Hamiel v. State, 285 N.W.2d 639 (Wis. 1979)(where request made on day of trial or immediately prior thereto, question is whether it was intended to secure delay or tactical advantage).

A defendant may not assert or exercise the right of self-representation as a means of unduly delaying the proceedings. People v. Barnes, 636 P.2d 1323 (Colo.App. 1981); German v. State, 373 N.E.2d 880 (Ind. 1978). And the trial court may terminate the defendant's self-

representation where the defendant, after warnings from the trial court, engages in disruptive and obstructionist conduct. Faretta v. California, supra; People v. Manson, 137 Cal.Rptr. 275 (1977), cert. denied, 435 U.S. 953 (1978); People v. Heidelberg, 338 N.E.2d 56 (Ill.App. 1975). However, a denial of the right of self-representation cannot be justified on the ground that the trial court anticipates disruptive behavior on the part of the defendant. State v. Sheppard, 310 S.E.2d 173, 187 at n.9 (W.Va. 1983).

Once the defendant expresses a timely and unequivocal desire to represent him/herself without the assistance of counsel, it must be ascertained whether his/her election to proceed in propria persona is made knowingly and intelligently. Faretta said that the defendant must know what s/he is doing and must make his/her choice "with eyes open." Faretta at 836. To this end, the trial court is required to conduct, on the record, an inquiry of the defendant, informing the defendant of his/her rights and of the possible consequences of self representation. Snead v. State, 406 A.2d 98 (Md. 1979); People v. Holcomb, 235 N.W.2d 343 (Mich. 1975)(reversed and remanded for new trial where no such inquiry was made). Importantly, however, Faretta clearly established that the technical legal knowledge of a defendant is not relevant to the question of whether his/her election to proceed pro se was intelligently and knowingly made. See also, e.g., State v. Cunningham, 567 P.2d 879 (Kan. 1977).

In sum, then, a defendant in a criminal proceeding who is competent and sui juris, has a constitutional right to appear and defend in person without the assistance of counsel, provided that (1) s/he voices his/her desire to represent him/herself in a timely and unequivocal manner; (2)

s/he elects to do so with full knowlege and understanding of his/her rights and of the risks involved in self-representation; and (3) s/he exercises the right in a manner which does not disrupt or create undue delay at trial.

Turning to the case at bar, the trial justice made no inquiry of Mr. Taylor at all to explore the reasons underlying the request and his ability to proceed pro se, which is in itself reversible error. The request was certainly unequivocal, as the trial justice fully recognized the assertion of the constitutional right, and was likewise timely since it was made a full week before the jury was in the box and no special requests were made of the court for a continuance or stand-by counsel.

Although the court assumed that Mr. Taylor could not represent himself and would do so to his peril, Faretta and its progeny are clear that a defendant "may conduct his own defense to his detriment," and that "his choice must be honored." Faretta at 835. The trial justice's real motivating factor in the denial was the videotaping statute, which arguably does not contemplate pro se defendants by its terms.

By asserting his constitutional rights both to represent himself and to confront his principal accuser, Sydney Taylor was certainly not trying to disrupt or frustrate the integrity of the court, in which event his rights may be forfeited. See Illinois v. Allen, 397 U.S. 337 (1970) (defendant removed from courtroom after repeated incidents of disruptive behavior). An invocation of a constitutional right can never in itself be considered disruptive or an affront to the integrity of the judicial process. Globe Newspaper Co., Illinois v. Allen and Faretta would all require some specific instance of contumacious conduct before a pro se request could be denied. Certainly the request itself did not reach the

serious level of witness intimidation or threat generally associated with the forfeiture of a right. Asserting a constitutional right cannot be equated with a threat or misconduct.

Once questioning of the witness by the defendant begins, the court may control the examination so that the witness is not intimidated beyond that which would occur during ordinary cross-examination. If the defendant did go beyond the bounds of vigorous defense and began to badger or intimidate the witness or otherwise impugn the integrity of the court, the court, of course, could then declare his/her rights forfeited.

This record is clear that the trial court committed per se reversible error in not allowing Mr. Taylor to proceed unrepresented:

> The nature of the right to proceed pro se renders the traditional harmless error doctrine particularly inapposite. Unlike other constitutional rights, the right to represent oneself is not "result oriented."
>
> *    *    *    *
>
> A defendant has a moral right to stand alone in his hour of trial and embrace the consequences of that course of action.

Chapman v. United States, 533 F.2d 886, 891 (5th Cir. 1977); Bittaker v. Enomoto, 587 F.2d 400 (9th Cir.), cert. denied 441 U.S. 913 (1978). By virtue of the videotaping statute, Sydney Taylor lost not one but two of his constitutional rights.